UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JW DOE | CIVIL ACTION |
| Plaintiff, | NO. 20-cv-1321 |
| v. | SECTION "T"(5) |
| | GGG-MBN |
| ARCHDIOCESE OF NEW ORLEANS INDEMNITY, INC., et al | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION TO UNSEAL THE DEPOSITON OF LAWRENCE HECKER and
RE-DESIGNATE DOCUMENTS AS "NON-CONFIDENTIAL"**

**NOW INTO COURT** comes plaintiff J.W. Doe, through undersigned counsel, who respectfully requests that this Court unseal the deposition transcript of defendant Lawrence Hecker along with the documents attached to the deposition transcript. (The two-volume deposition transcript is attached as Exhibit 1, the exhibits to the deposition are attached as Exhibit 2 *en globo*, the video of the deposition is attached as Exhibit 3, and a motion filed under seal in state court is attached as Exhibit 4. The deposition and all these exhibits are attached and filed under seal).

The road to get this issue before a court for review has been a long and tortured one, as was the process of both scheduling and taking the deposition of Hecker. It took four judges – a state district court judge, a Federal bankruptcy judge, a Federal District Court Judge, and a Federal Magistrate Judge, to free up these documents and take Hecker's deposition. Deposing Hecker was like pulling impacted wisdom teeth with a pliers covered in Vaseline. Unfortunately, in order to fully appreciate how difficult this deposition was to take, the Court might need to view at least part of the video. The major complications in taking this deposition were: 1) Hecker's refusal to

1

directly answer the questions of plaintiff's counsel, 2) Hecker's sporadic invocation of his Fifth Amendment rights, which sometimes included both answering the question asked and taking the Fifth, 3) Hecker's attorney's constant attempts to restrain and redirect Hecker and the arguments that ensued between them, 4) constant unwarranted, obstructive objections to form, speaking objections, and interruptions by counsel for the Archdiocese, and 5) technological issues with taking this deposition via Zoom, as opposed to taking it in the Federal Courthouse as originally proposed.[1]

**INTRODUCTION**

This is one of the most consequential pleadings all three undersigned counsel ever have filed, and it is expected that it might be for the Court as well. This case relates to matters of utmost public concern, the sexual abuse of JW Doe and many other children by a living, diseased pedophile (Father Lawrence Hecker), and the cover-up of that abuse by the Archdiocese of New Orleans ("The Archdiocese").[2] Importantly, no court has had the opportunity to review and rule on the documents that comprise Exhibit 2, and as this Court will see, the attorneys for The Archdiocese were exceedingly liberal in their use of the "confidential" designation, which resulted in the further concealment of evidence of multiple felonies. This dam should break, and it should break now. The only things that should be protected/redacted by this Court are the names of Hecker's victims and/or their relatives.

---

[1] At the very end of the deposition, counsel for Catholic Mutual asked a very short series of questions. After two days of an incredible mess while being questioned by plaintiff's counsel, Hecker had a miraculous recovery of memory and ability to concisely answer questions. (Ex. 1, Vol. II pp. 186-190).

[2] The Archdiocese of New Orleans is a debtor in the United States Bankruptcy Court, and Bankruptcy Court Judge Meredith Grabill has ruled that the Archdiocese's participation in *this* case cannot result in a waiver of the automatic stay in the bankruptcy. This did not constrain counsel from eliciting testimony or evidence of the Archdiocese's own misconduct incidental to proving plaintiff's case against Hecker. In the long run, the Archdiocese's bankruptcy protection is not affected by this deposition.

2

In the underlying state court proceeding, the wholesale designation of thousands of pages of documentation by the Archdiocese as "confidential" concerning this matter of extraordinary public interest was unwarranted, and this extended concealment of felonies against children should not be perpetuated and/or condoned by this Court. Hecker is still very much alive, vibrant, lives alone, and is a danger to young boys until he draws his final breath.

Hecker and The Archdiocese cannot prove that there is "good cause" for shielding the deposition and documents from the public as required by The Federal Rules of Civil Procedure, United States Supreme Court, and the United States Fifth Circuit Court of Appeals. No showing can be made that disclosure of the deposition and documents will injure any individual's privacy interests, because quite simply, this deposition and the documents attached to it establish grotesque felonies committed by Hecker that systematically were covered up by The Archdiocese for several decades. Evidence of undisclosed felonies never can be designated as "confidential."

Moreover, The Archdiocese cannot establish that any privacy interests in the deposition/documents outweigh the significant public concern raised by the deposition/documents. Indeed, any private interests here are minimal compared to the public's concern about Father/Monsignor Lawrence Hecker's numerous and documented sexual assaults of children and the role The Archdiocese played in covering up Hecker's crimes, thereby potentially perpetrating its own crimes.

The public's legitimate interest in Hecker's sexual abuse of boys and the handling by The Archdiocese of sexual abuse claims is of great public concern. The Archdiocese collects millions of dollars from local residents to support its activities and regularly attempts to influence public opinion with press conferences, media interviews, and photo-ops. Gregory Aymond and Alfred Hughes are hardly private individuals who have been dragged into the spotlight. As such, a high-

profile institution such as The Archdiocese surely involves only minimal privacy interests; also several individuals identified in these documents are dead. The public has a substantial interest in a known pedophile walking the streets and how sexual molestation claims are addressed by The Archdiocese.

As stated when a motion similar to this one (but before Hecker had been deposed) was filed in the underlying state court case, a direct-line analogy can be drawn from this case to the Father John Geoghan cases in the Archdiocese of Boston and Cardinal Bernard Law, which resulted in the Boston Globe's bombshell expose' in 2002 entitled "Church Allowed Abuse by Priest for Years" published by its Spotlight team and later resulting in the movie *Spotlight* and the book *Betrayal*.

Like Lawrence Hecker, John Geoghan was a dangerous pedophile-priest who sexually abused scores of boys over decades but then was moved from parish to parish like a toxic chess piece every time complaints of sexual assault arose against him. And like Hecker, when the fire got too hot, the Archdiocese of Boston (like the Archdiocese of New Orleans here) sent Geoghan away for "treatment."

There is also an undeniable connection between these two cases - - Archbishop Emeritus Alfred Hughes. Indeed, the documents at issue will reveal in no uncertain terms that the last four Archbishops of New Orleans (Hannan, Schulte, Hughes, and Aymond) knew that Lawrence Hecker was a serial child predator, yet they moved him, coddled him, and absolutely failed to properly report his crimes to the appropriate authorities. The Archdiocese continued to take care of Hecker and other pedophiles financially and otherwise until Judge Grabill ordered a stop to it, if only for the financial aspect.

A discussion of the applicable Massachusetts cases will be included below. Indeed, when this exact battle was fought in Boston approximately 18 years ago, the Massachusetts courts ruled in favor of the disclosure of exactly the same type of documents The Archdiocese of New Orleans currently seeks to hide from the media, the public, and law enforcement.[3]

Unsealing the deposition and documents is a relatively simple legal proposition - - evidence of criminality and openness of the court system unequivocally require transparency and public disclosure. However, undersigned counsel are fully aware that this motion will prompt from the Archdiocese (but maybe not Hecker) a vociferous, fire-breathing opposition memorandum (heavy with mind-numbing footnotes) that will attempt to steer this Court away from this simple issue. The opposition memorandum certainly will attack undersigned counsel in the process. Revealing these painful and disturbing truths has not been an easy process for the abuse-survivors or their lawyers, but this motion is where the proverbial rubber meets the road. And it will not be lost on this Court that Lawrence Hecker's story is *only one* story of the several dozen pedophiles to operate under the auspices of The Archdiocese of New Orleans.

Hecker and the Archdiocese cannot satisfy their heavy burden that evidence of criminal conduct is somehow "good cause" for shielding the deposition and documents from the public. No showing can be made that disclosure of the deposition and documents will injure any individual's privacy interests, because quite simply, this deposition and the documents attached to it establish grotesque felonies committed by Hecker that systematically were covered up by the Archdiocese for several decades. Evidence of undisclosed felonies never can be designated as "confidential."

---

[3] Undersigned counsel are aware that this Court is neither bound nor instructed by this discussion of Massachusetts state jurisprudence, but these references are critical for a historical perspective.

Exhibit 4 provides a good, if not quite complete, narrative of certain documents that this Court will review. Like the instant motion, the sealed motion was as serious a motion as undersigned counsel ever filed, and it was scheduled to be heard in state court when the Archdiocese filed its bankruptcy.

LAW

Although undersigned counsel agreed to seal this deposition transcript and most of the documents attached to it until this Court could review them, there should be no <u>permanent</u> protective order or seal relative to the deposition or these documents because The Archdiocese of New Orleans is attempting to use this process to continue its efforts to conceal extensive criminality including but not limited to: child rape, child sexual abuse, human trafficking, obstruction of justice, and misprision of felonies.[4]

### I. **There Can Be No Protective Order Under FRCP, Rule 26(c).**

"Protective orders are subject to scrutiny as violative of the First Amendment. Protective orders infringing upon First Amendment rights must serve an important and legitimate governmental interest and be no broader than necessary to protect that interest." *Id*. at 568, citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984).

It cannot seriously be disputed that this deposition or documents at issue in this case concerning "sexual abuse of minors by priests" are a legitimate subject of public interest. See, e.g., *Father M v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417 (9th Cir. 2011); *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)(discussed *infra*). The court in *Father M* stated it plainly: "The public does, however, have a weighty interest in public safety and in

---

[4] Counsel also appreciate that the portion of any oral argument or hearing wherein the content of the deposition and documents is discussed would have to be sealed to the public pending the Court's ruling on unsealing them.

6

knowing who might sexually abuse children." 661 F.3d at 428, citing *New York v. Ferber*, 458 U.S. 747, 756-63 (1982).

"To maintain a protective order, a party must be able to show 'for each particular document it seeks to protect' . . . that specific prejudice or harm will result if no protective order is granted." *Soule v. RSC Equipment Rental*, 2012 U.S. Dist. Lexis 15904 at *6 (E.D. La. 2/9/12), quoting *Foltz v. State Farm,* 331 F.3d 1122, 1130 (9th Cir. 2003). "Once a party has challenged the contention that documents protected by a blanket protective order should be kept under seal, 'the district court must require [the party supporting confidentiality] to make an actual showing of good cause for [the documents'] continuing protection under Federal Rule of Civil Procedure 26(c)." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc*., 712 F.3d 1349, 1355 (9th Cir. 2013), quoting *Foltz*.

Any analysis of the issue could end here because the deposition and documents themselves cannot be the subject of a protective order under Rule 26(c).

## II.     **Fifth Circuit Precedent**

The United States Fifth Circuit Court of Appeals has weighed in on the issue of whether documents relative to sexually deviant priests should be released to the public in *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994). In *Cinel* a variety of sexually oriented materials were obtained from Father Dino Cinel's room including a homemade video tape of Cinel engaged in homosexual activity, primarily with two young men, Christopher Fontaine and Ronald Tichenor.

In 1990, in connection with a state civil suit filed by the victim Fontaine, and at the request of the Church, a subpoena duces tecum was issued directing the DA's office to release the materials found in Cinel's room to the litigants in the Fontaine suit. The DA's office released the materials to the victim's attorneys as custodians. Cinel alleged in his complaint, where he asserted Federal civil rights violations, that the allegedly confidential materials were released "under the pretext of

7

a subpoena and consent judgment." The documents were later published by local and national news media in stories highlighting the *Cinel* case, and Cinel claimed that the public disclosure was in violation of his rights.

The Fifth Circuit recognized that the trial judge, Martin Leach-Cross Feldman, held that the materials were a matter of legitimate public concern. Judge Feldman explained that:

> [T]he materials related to Appellant's guilt or innocence of criminal conduct. Also, the material implicated the public's concern with the performance of its elected DA, especially because the DA's decision cannot be reviewed by a court. *See State v. Perez,* 464 So.2d 737, 744 (La.1985) (explaining that the district attorney is given absolute discretion in the institution of criminal charges). Finally, the materials concerned Appellant's activities while an ordained Catholic priest and the Church's response to those activities.

Even Cinel acknowledged the newsworthiness of the materials, but he claimed that they added nothing to the underlying case and were an invasion of his privacy. The Fifth Circuit disagreed, stating that, "The materials broadcast by the Appellees were substantially related to Appellant's story," and therefore the public disclosure was not violative of the priest's rights. Further, and in approving the public disclosure of the materials, the Fifth Circuit explained,

> Perhaps the use of the materials reflected the media's insensitivity, and no doubt Appellant was embarrassed, but we are not prepared to make editorial decisions for the media regarding information directly related to matters of public concern. See, e.g., *Ross v. Midwest Communications, Inc.,* 870 F.2d 271, 275 (5th Cir.) ("judges, acting with the benefit of hindsight, must resist the temptation to edit journalists aggressively"), *cert. denied,* 493 U.S. 935, 110 S.Ct. 326, 107 L.Ed.2d 316 (1989); *Neff v. Time, Inc.,* 406 F.Supp. 858, 860 (W.D.Pa.1976) (noting that "the courts are not concerned with establishing canons of good taste for the press or the public") (internal quotations omitted); *Cape Publications, Inc. v. Bridges,* 423 So.2d 426, 427–28 (Fla.Dist.Ct.App.1982) (concluding that when plaintiff's nude picture was relevant to a story of public interest, there is no invasion of privacy, even though picture may be embarrassing or distressful to the plaintiff), *cert. denied,* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 229 (1983).

Hecker's deposition and the documents in this case are no less probative of criminal conduct than the actual video tapes of sexual activity in the *Cinel* case. In fact, Hecker's criminal

conduct and The Archdiocese's concealment of that conduct dwarf what happened with Dino Cinel. The documents are relevant to all of Hecker's victims-survivors as well as to the Archdiocese's policy, practice, and procedure of covering up criminal conduct, abuse allegations and enabling predators.

### III. Federal Courts Favor Transparency.

Numerous courts weighing similar competing interests have ruled in favor of openness. For instance, in *Humboldt Baykeeper v. Union Pacific*, 244 F.R.D. 560 (N.D. Cal. 2007), the defendants asked for protection against disclosure of discovery information about environmental contamination at a property site. The plaintiffs admitted they might share the information with groups who are concerned about environmental issues. The court refused to keep the documents confidential because of the "important societal interests" involved. Id. at 567.

Similarly, in *Avirgan v. Hull*, 118 F.R.D. 252, 256 (D. D.C. 1987), the court rejected a request by a non-party to prohibit attendance by the press at his deposition because of the public interest in the litigation involving the government's activities against the Nicaraguan Contras.

Likewise, in *Condit v. Dunne*, 225 F.R.D. 113, 119 (S.D. N.Y. 2004), the court allowed public access to the deposition transcript of a writer sued by a former Congressman over articles about rumors of his relationship to a murdered congressional intern because the issues in the litigation were of public concern.

### IV. Because the Documents Appear to Reveal Prosecutable Crimes, They Must Be Disclosed.

A review of the deposition and documents implicates several crimes. Although the Archdiocese consistently has argued that the crimes were committed many years ago (or are "decades-old"), certain applicable Federal Laws might still allow for the prosecution of the actions of Hecker, and the persons that had knowledge of his crimes, but suppressed them.

The deposition and almost all the documents that have been attached must be excluded from any protection because they tend to prove actual crimes, or the furtherance of crimes and/or are excluded from any protection or privilege whatsoever under a crime-fraud exception to the attorney-client privilege. Plaintiff's contention that there are crimes revealed in the documents is not an overstatement. Certain of these crimes and the applicable limitation periods are cited below, and most particularly 18 U.S.C. Sections §2421, §2422, and §2423, specifically set forth the following:

### 18 U.S.C. §2421

(a) In General. —
Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

### 18 U.S.C. §2422

(a) Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

### 18 U.S.C. §2423

(a)Transportation With Intent To Engage in Criminal Sexual Activity.

A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

(b)Travel With Intent To Engage in Illicit Sexual Conduct.

A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, with a motivating purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

Additionally, there are continuing violations under federal law for any individual who possesses knowledge of a felony but conceals and/or fails to report the felony to the authorities.

Under **18 U.S.C. §4**,

Misprision of felony

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

Moreover, while the Archdiocese has asserted repeatedly that these cases arose many years ago, the documents The Archdiocese attempts to hide from the public appear to involve the listed crimes above for which there is no statute of limitations on the prosecution thereof.

Under **18 U.S. Code §3299**.

Child abduction and sex offenses

Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A, 110 (except for section [1] 2257 and 2257A), or 117, or section 1591.

This is all the more reason to make these documents and Hecker's deposition public. Undersigned counsel are not Louisiana or Federal prosecutors, but are obligated as officers of the court to take steps to expose these crimes.

V. **The Boston Globe and Massachusetts Cases on the Exact Issue.**

As mentioned above, this exact battle for these exact types of documents was fought nearly two decades ago when the Boston Globe decided to intervene in cases involving disgraced pedophile

priest John Geoghan and now disgraced Cardinal Bernard Law, who once was revered like Hannan, Schulte, Hughes, and Aymond. Law was revered until it was unequivocally revealed that he and others like his subordinate bishop Alfred Hughes had known for decades of Geoghan's sexual assault of children but failed to act on their knowledge.

In the first ruling relative to the public's interest in the internal Archdiocese documents in *Leary v. Geoghan*, 2001 WL 1902393 (Superior Court of Massachusetts 11-26-01), Judge Constance Sweeney, who happens to be Catholic, analyzed the issue under the following procedural circumstances:

> Globe Newspaper Company (hereafter "Globe") moves to intervene in these actions for the limited purpose of obtaining a right to access discovery materials, and consistent therewith <u>to have the court require that the parties file discovery responses in the public court file</u>. The plaintiffs support the Globe's requests while the supervisory defendants oppose them.
> (Emphasis added)

Before giving the reasoning for her "MEMORANDUM OF DECISION AND OMNIBUS DISCOVERY ORDER," Judge Sweeney set forth her succinct ruling as follows:

> For the reasons set forth herein, the Globe's motion to intervene to obtain access to discovery materials is allowed. *Id*.

Also, before writing her legal analysis, Judge Sweeney referenced an existing "Confidentiality Order," much like the Protective Order the Archdiocese of New Orleans has proposed in this case and many others.

> The Globe has now brought to the court's attention that the Confidentiality Order may well have had the unintended effect of impeding the access of the public and the press to certain aspects of these cases. The plaintiffs agree with the Globe's position. The supervisory defendants claim that the Globe does not have standing to intervene in this matter and further assert that the Confidentiality Order does not run afoul of constitutional or statutory provisions concerning public access to judicial proceedings and files.

As an initial matter, this is the same position The Archdiocese has advocated for in the cases pending in this court and state court - - to keep the public and media from having access to documents that show underlying crimes.

After a thorough analysis of the media's right to intervene, Judge Sweeney then turned to the issue of confidentiality orders (protective orders), and wrote, "As discussed earlier, the net effect of the Confidentiality Order is to shift the presumption that discovery documents are public to a presumption that they are not whenever a party chooses to stamp 'confidential' on a discovery response and the other parties do not challenge that designation." *Id.* at p. 6.

This same unilateral designation process employed by The Archdiocese of New Orleans in this case should be rejected by this Court.

And while the Commonwealth of Massachusetts has procedural rules more specifically directed at the issue of the public's right to discovery than do the Federal Rules of Civil Procedure, the outcome should be no different here because the *Leary* court relied on jurisprudence from the Unites States Supreme Court (also discussed above). "The United States Supreme Court has recognized a general, but not necessarily unlimited, right of the public to access pretrial discovery. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 37 (1984). See also, *Cable News Network, Inc. v. United States Dist. Court,* 472 U.S. 1017 (1985) and *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249 (4th Cir.1988)."

Likewise, another Geoghan case, *Demeo v. Geoghan*, 2001 WL 1902397 (Superior Court of Massachusetts 11-26-01) involved an attempt to "impound" or seal the pleadings adding Cardinal Bernard Law to the case.

> Plaintiffs have moved to amend their complaints to add His Eminence Bernard Cardinal Law as an individual defendant in each of the captioned actions. Neither the present defendants nor Cardinal Law oppose that amendment. Both, however, seek to impound the pleadings revealing Cardinal Law's status as a defendant on

grounds that Cardinal Law has denied the allegations of the amended complaints, those complaints contain unproven allegations and the likelihood of publicity attendant on revelation of his status as an individual defendant would make a fair trial difficult. Plaintiffs oppose the motion on grounds that defendants have not overcome the general principle of publicity that typically attends matters pending in the courts.

In denying the defendants' (including Cardinal Law) motion, the *Demeo* court concluded, "For fairness and balance, we ultimately depend, and must depend, not on closed doors, but on a collective willingness to hear both sides before reaching firm conclusions." *Id* at p. 2.

Plaintiff in the case *sub judice* JW Doe asks for nothing more or less than what the plaintiffs received in the Boston cases, transparency of the proceedings, particularly the Hecker deposition and documents that establish multiple crimes and their cover up.

**VI.	Conclusion**

For all of the foregoing reasons*, Plaintiff's Motion to Motion to Unseal the Deposition of Lawrence Hecker* should be **GRANTED**.

Respectfully submitted,

/s/ Richard C. Trahant
RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
Email: trahant@trahantlawoffice.com

-AND-

SOREN E. GISLESON La Bar No. 26302
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

-AND-

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA  70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
jdenenea@midcitylaw.com

*Attorneys for J.W. Doe*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel of record by operation of the Court's electronic filing system on December 23, 2020.

/s/ Richard C. Trahant
RICHARD C. TRAHANT