**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| _____ : | **NO. 20-cv-1321** | |
| **JW DOE** : | | |
| : | **JUDGE MILAZZO** | |
| **Plaintiff,** : | | |
| **v.** : | **MAG JUDGE: DOUGLAS** | |
| : | | |
| **ARCHDIOCESE OF NEW ORLEANS** : | | |
| **INDEMNITY, INC., et al** : | | |
| : | | |
| **Defendants.** : | | |
| _____ : | | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
***SECOND* MOTION TO UNSEAL THE DEPOSITION OF LAWRENCE HECKER**
**AND REFER TO LAW ENFORCEMENT**

**NOW INTO COURT** comes plaintiff J.W. Doe, through undersigned counsel, who respectfully requests that this Court unseal the deposition transcript of defendant "Monsignor" Lawrence Hecker (Hecker) along with the documents attached to the deposition transcript. (The two-volume deposition transcript is attached as Exhibit 1, the pertinent exhibits to the deposition are attached as Exhibit 2 *en globo*, and the video of the deposition is attached as Exhibit 3.  Exhibits 1-3 will be filed under seal).[1]

Plaintiff moves the Court for an order as follows: (1) unsealing the deposition and exhibits; and (2) authorizing criminal referral to the appropriate local, state, and federal authorities.   Law enforcement has recently requested access to these documents, but Plaintiff's counsel has told them that now-recused Magistrate Judge North's Order sealing these documents prevents them from disclosure.

_____

[1] Plaintiff files these exhibits under seal not because he believes they are worthy of being sealed, but out of an abundance of caution.  Plaintiff has redacted by highlighting the designations as to confidential information in Exhibit 1.

I.      **Fr. Hecker is a danger to children.**

Plaintiff's counsel deposed "Monsignor" Lawrence Hecker over the course of two days, December 14 and 15 of 2020 pursuant to a limited lift of the bankruptcy stay related to the Archdiocese of New Orleans Bankruptcy, No. 20-10846 (E.D. La.) (Grabill, BJ).  The bankruptcy stay was lifted to allow the depositions of certain aging Archdiocese priests to allow Plaintiff's counsel to conduct depositions and relevant discovery.  (Rec. Doc. 18-2.)

Fr. Hecker, a New Orleans native, attended St. Joseph Seminary and Notre Dame Seminary before he was ordained as an archdiocesan priest in 1958.  Throughout his years as a priest in the Archdiocese of New Orleans, Fr. Hecker was relocated at least 10 times to various locations across the New Orleans Metro Area: from 1958–1960, Our Lady of Holy Rosary; in 1961, St. Mary Parish, New Roads; 1962–64, St. Frances Cabrini; 1965-66, St. Bernadette in Houma; 1966-69, St. Joseph in Gretna; from 1969–1974, St. Theresa of the Child aka "Little Flower"; while assigned to Little Flower, he also served as the Spiritual Director at St. John Preparatory High School.



[2] Except for the deposition, the documents referenced and attached were obtained before this case was removed to federal court.  There are several more compelling documents pertaining to Fr. Hecker that were inexplicably produced in the bankruptcy proceeding, but not the state court proceeding.

4



Fr. Hecker presently lives in the Uptown neighborhood of New Orleans.  He lives within walking distance to a number of day cares, grammar schools, and high schools.  These include: Rayne Preschool; Children's Preschool; St. Stephen's Elementary School; St. Georges Episcopal School; Academy of the Sacred Heart School; and Sophie B. Wright School.  Nearby is also a park (Lawrence Square).

Plaintiff has seen no evidence that anyone is monitoring Fr. Hecker's activities. The Archdiocese does not control Fr. Hecker's movements or otherwise electronically surveil him. While it may have precluded him from "active ministry," there is no evidence that the Archdiocese instructed him to avoid children of any age or stay away from schools.

██████████████████████████████████████

██████████████████████████████████      ███

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████      █████████

████████████████████████████████████████

███████

## II.     **Magistrate Judge North denied the first motion to unseal, recused himself, and then Judge Guidry recused himself.**

On December 23, 2020, within ten days of the deposition, Plaintiff filed a motion to unseal Fr. Hecker's deposition and the attached documents. (Rec Doc. 26) On January 27, 2021, Magistrate Judge North held a sealed hearing.  (The transcript is attached as Exhibit 4 and filed *under seal*). On January 27, 2021, he denied Plaintiff's motion.  (Rec. Doc. 57.)

Magistrate Judge North denied the first motion to unseal on multiple grounds.  First, Magistrate Judge North ruled that the motion to unseal was premature because no protective order

had been entered and no confidentiality designations had been made. (Rec. Doc. 57.) The Court then *sua sponte* entered its own protective order. *Id.* at 1. Next, Magistrate Judge North ruled that the "questions and testimony germane to the claims against Fr. Hecker and the Archdiocese are so intertwined that they are insusceptible of meaningful disentanglement". *Id.* at 1-2. Finally, Magistrate Judge North ruled that unsealing these documents would violate the automatic stay. *Id.* at 2. Plaintiff is still at a loss to understand why.

On October 17, 2022, Magistrate Judge North recused himself from this case. (Rec. Doc. 74). In his recusal order, he miscited the recusal statute. Chief Judge Jolivette Brown eventually filed a correction into this case (Rec. Doc. 75) and into another Archdiocese sexual abuse case in which Magistrate Judge North made the same error, even though she was never assigned as the presiding judge on either case. *See James Doe v. Archdiocese of New Orleans*, No. 20-1338 (E.D. La.) (10/31/22) (Rec. Doc. 86). Although he stated that the recusal was due to "change in circumstances", Magistrate Judge North never identified what the "change in circumstances" entailed.

On May 2, 2023, Judge Guidry recused himself from this case. (Rec. Doc. 78). Judge Guidry cited the same reason for recusal as Judge North, 28 U.S.C. § 455(a). No party filed a motion to recuse. It appears that at least some of Judge Guidry's reasons for recusal were reported in the media. *See Judge Stays on Catholic Bankruptcy Despite Church Donations*, AP News (04/21/23); *Judge in Catholic Bankruptcy Recuses Over Church Donations*, AP News (04/29/23); *Judge in Archdiocese Bankruptcy Case Recuses Himself Over Donations Scandal*, The Guardian (04/29/23), attached as Exhibit 5.

Magistrate Judge North improperly sealed Fr. Hecker's deposition, the documents attached to his deposition, and the hearing transcript on the first motion to unseal. Magistrate Judge North

never addressed the safety of children in his ruling, the public's significant public interest in its

own protection, or the need for Fr. Hecker to be investigated criminally.  Magistrate Judge North

also wholly failed to identify or address ███████████████████████████████████.

Ultimately, Magistrate Judge North's ruling violated the clear Fifth Circuit precedent in *Cinel v.

Connick*, 15 F.3d 1338 (5th Cir. 1994), *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410 (5th Cir.

2021), and *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512 (5th Cir. 2022).  More specifically,

*Binh Hoa Le* and *June Med. Servs* set forth demanding requirements for the sealing of records.

**III.     The Fifth Circuit Requires Unsealing Documents Related to Public Safety.**

The United States Fifth Circuit Court of Appeals has weighed in on the issue of whether

documents relative to predator priests should be released to the public in *Cinel v. Connick*, 15 F.3d

1338 (5th Cir. 1994).  In *Cinel* a variety of sexually oriented materials were obtained from Father

Dino Cinel's room including a homemade video tape of Cinel engaged in homosexual activity,

primarily with two young men, Christopher Fontaine and Ronald Tichenor.

In 1990, in connection with a state civil suit filed by the victim Fontaine, and at the request

of the Church, a subpoena duces tecum was issued directing the DA's office to release the materials

found in Cinel's room to the litigants in the Fontaine suit. The DA's office released the materials

to the victim's attorneys as custodians. Cinel alleged in his complaint, where he asserted Federal

civil rights violations, that the allegedly confidential materials were released "under the pretext of

a subpoena and consent judgment." The documents were later published by local and national

news media in stories highlighting the *Cinel* case, and Cinel claimed that the public disclosure was

in violation of his rights.

The Fifth Circuit recognized that the trial judge, Martin Feldman, held that the materials

were a matter of legitimate public concern. Judge Feldman explained that:

9

[T]he materials related to Appellant's guilt or innocence of criminal conduct. Also, the material implicated the public's concern with the performance of its elected DA, especially because the DA's decision cannot be reviewed by a court. *See State v. Perez,* 464 So.2d 737, 744 (La.1985) (explaining that the district attorney is given absolute discretion in the institution of criminal charges). Finally, the materials concerned Appellant's activities while an ordained Catholic priest and the Church's response to those activities.

Even Cinel acknowledged the newsworthiness of the materials, but he claimed that they added nothing to the underlying case and were an invasion of his privacy. The Fifth Circuit disagreed, stating that, "The materials broadcast by the Appellees were substantially related to Appellant's story," and therefore the public disclosure was not violative of the priest's rights. Further, and in approving the public disclosure of the materials, the Fifth Circuit explained,

Perhaps the use of the materials reflected the media's insensitivity, and no doubt Appellant was embarrassed, but we are not prepared to make editorial decisions for the media regarding information directly related to matters of public concern. See, e.g., *Ross v. Midwest Communications, Inc.,* 870 F.2d 271, 275 (5th Cir.) ("judges, acting with the benefit of hindsight, must resist the temptation to edit journalists aggressively"), *cert. denied,* 493 U.S. 935, 110 S.Ct. 326, 107 L.Ed.2d 316 (1989); *Neff v. Time, Inc.,* 406 F.Supp. 858, 860 (W.D.Pa.1976) (noting that "the courts are not concerned with establishing canons of good taste for the press or the public") (internal quotations omitted); *Cape Publications, Inc. v. Bridges,* 423 So.2d 426, 427–28 (Fla.Dist.Ct.App.1982) (concluding that when plaintiff's nude picture was relevant to a story of public interest, there is no invasion of privacy, even though picture may be embarrassing or distressful to the plaintiff), *cert. denied,* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 229 (1983).

███████████████████████████████████████

██████████████████████████████  ██████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████

More recently, as discussed above, the Fifth Circuit has ruled repeatedly that sealing court records qualifies as its own distinct court action which demands exacting scrutiny with written reasons:

> [W]hen materials enter the court record, the standard for shielding records from public view is far more arduous.  This conflation error—equating the standard for keeping unfiled discovery confidential with the standard for placing filed materials under seal—is a common one and one that over-privileges secrecy and devalues transparency.
>
> The secrecy of judicial records, including stipulated secrecy, must be justified and weighed against the presumption of openness that can be rebutted only by compelling countervailing interests favoring nondisclosure.  All too often, judicial records are sealed without any showing that secrecy is warranted or why the public's presumptive right of access is subordinated.  This mistake harms the public interest, however interested the public is likely to be.

*Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 420–21 (5th Cir. 2021) (footnotes omitted) (emphasis added) (noting the specific public harm that sealing court documents can create in child sex abuse cases like the "Spotlight" investigation).

Documents filed into a court's docket belong to the public, not to a particular party in the case.  As the Fifth Circuit explained just last year:

> Here, the district court failed to heed our instructions. First, the district court misapprehended the nature and extent of the public's right to judicial records. "Judicial records belong to the American people; they are public, n notprivate,documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). And "[t]he public's right of access to judicial records is a fundamental element of the rule of law." *Leopold v. United States (In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders)*, 964 F.3d 1121, 1123 (D.C. Cir. 2020). "The public has an interest in transparent court proceedings that is independent of the parties' interests." *In re Gee*, No. 19-30953, slip op. at 8, 2019 WL 13067384 (5th Cir. Nov. 27, 2019) (Elrod, J., concurring) (emphasis omitted). This right "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 210 (5th Cir. 2019) (quoting *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010)). Accordingly, we heavily disfavor sealing information placed in the judicial record. *See Vantage*,           913           F.3d           at           450–51.

> *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519–20 (5th Cir. 2022) (emphasis supplied) (footnote omitted).

The Fifth Circuit in both *Binh Hoa Le* and *June Med. Servs., L.L.C,* 22 F.4th 512, 521 (5th Cir. 2022), explained that when deciding whether documents should remain under seal, the focus must be on the public's right to access which can only be overridden by a showing of "compelling countervailing interests favoring nondisclosure."  It is impossible for Fr. Hecker and the Archdiocese to meet this burden, and Magistrate Judge North did not require them to do so.  This Court should.

Similarly, just months ago, Judge Susie Morgan ruled that a financial auditing report that revealed likely and significant financial crimes against an accused pedophile priest and was stamped "confidential" by the Archdiocese was in fact not confidential at all.  Judge Morgan wrote in pertinent part:

> First, the Archdiocese's generic argument that the Carr Riggs report should be designated as confidential because it is 'embarrassing' does not outweigh the 'public's interest in an open and honest judicial process.' Courts have consistently held that a party's embarrassment or incrimination, absent something more, is not a basis for documents to be held confidential under Rule 26. The Court, exercising its discretion, finds good cause does not exist merely because the Report may bring, as a general matter, embarrassment to the Archdiocese.

> Second, with respect to the Archdiocese's argument that good cause exists to designate the Carr Riggs report as confidential because the Report is irrelevant to this litigation, the Archdiocese acknowledged during oral argument that the Report is relevant because the information contained therein bears on Asare's credibility. Thus, the Court finds this argument without merit.

> \*       \*       \*       \*       \*

> Third, to cast a broad net of confidentiality over the Report on the basis of vague concerns of unwanted publicity runs afoul of the Fifth Circuit's recognition that '[a] party may generally do what it wants with material obtained through the discovery process.' Without a particularized showing, the Court, exercising its discretion, does not find good cause exists merely because the Report may bring unwanted publicity to the Archdiocese.

*A.A. Doe v. The Roman Catholic Church of The Archdiocese of New Orleans, et al.* 2022

WL 16712878, at 6-7 (11/04/22) (Morgan, J.) (footnotes omitted).

In her ruling, Judge Morgan cited specifically to a <u>National Law Journal</u> article authored

by retired Fifth Circuit Judge Greg Costa entitled "Federal Appellate Judge: Too Many Sealed

Documents." (Attached as Exhibit 6).  In this article Judge Costa wrote:

> The Oscar-nominated film "Spotlight" tells the story of Boston Globe reporters who exposed the Catholic Archdiocese of Boston's cover-up of sexual abuse committed by some of its priests. For all the reporters' hard work interviewing victims and other witnesses, the turning point in breaking the story came when they obtained access to previously sealed court documents. The "smoking gun" documents had been sitting for years in the court files of a lawsuit filed against the archdiocese. If not for the newspaper's efforts to unseal the documents, who knows if the truth the reporters eventually revealed would be known even today.

> This unjustified sealing of court records happens all too often. The problem was on display last year not just at the movie theater, but also in news stories about the unsealing of Bill Cosby's deposition testimony and disputes over sealed videos of police shootings.

> The law says it shouldn't be this way. The U.S. Supreme Court has recognized a long-standing public right to access court records that results in a presumption that anything filed with a court should be available to the public. Only limited categories of documents - such as those revealing trade secrets or other proprietary information or involving topics protected by privacy laws such as information about juveniles or medical history - can overcome the default rule of public access.

Indeed, clergy child sexual abuse is a recurring litigation arena wherein the Catholic

Church attempts to hide documents evincing child rape from the public. Judge Costa continued:

> A main culprit is the protective order. Originally issued to protect a party from an unwarranted request for discovery, these court orders are now routinely filed as agreed orders at the outset of a case. They are useful in setting procedures that govern the entire discovery process. But one common aspect of these orders is the root of the oversealing problem. Protective orders typically allow parties to designate documents that are exchanged in discovery as 'confidential' or 'highly confidential.' Those designations determine whether the documents can be disclosed outside the litigation and who among the attorneys and parties can view the documents. No problem there. The right of public access applies to documents filed with the court, not those merely exchanged during discovery.

The problem is with what typically comes next: a requirement that any document that has been given a certain confidentiality designation must be filed under seal when presented to the court. When courts approve such protective orders, the cycle of concealment from the public is set in motion. There is usually little incentive for the opposing party to challenge a confidentiality designation. It typically wants the documents only for purposes of the case and also hopes to conceal its own 'bad' documents.

Judge Costa perfectly summed up the Archdiocese's *modus operandi* in these child sexual abuse cases - - "It typically wants the documents only for purposes of the case and also hopes to conceal its own 'bad' documents."  Such is the exact situation here, and this Court should not countenance this approach by the Archdiocese.

The public has a significant interest in knowing that crimes are occurring in its city.  *See Bradley obo AJW v. Ackal*, 954 F.3d 216, 233 (5th Cir. 2020) (citation omitted) ("[T]he rationale for public access is even greater" where, as here, the case "involve[s] matters of particularly public interest."); *Shane Grp. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access.").

It cannot seriously be disputed that this deposition or documents at issue in this case concerning "sexual abuse of minors by priests" are a legitimate subject of public interest.  See, e.g., *Father M v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417 (9th Cir. 2011); *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)(discussed infra). The court in Father M stated it plainly: "The public does, however, have a weighty interest in public safety and in knowing who might sexually abuse children." 661 F.3d at 428, citing New York v. Ferber, 458 U.S. 747, 756-63 (1982).

Fr. Hecker remains a danger to children.  He is still free and roaming the streets of New Orleans, and he certainly did not "age out" of his pedophilia.  The public has a significant interest

in the authorities obtaining documents of his crimes to decide whether there are prosecutable crimes.

**IV.    The Documents Are Evidence of Crimes and Must Be Referred to the Authorities.**

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████▌ █████████████████████

████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████

**18  U.S.C. §2421**

(a)  In General. —
Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

---

[4]  Undersigned counsel are civil lawyers, but recognize that their duty to disclose does not require any attorney to fully evaluate the crime and the likelihood of conviction, only that evidence of potential crimes triggers their professional obligation.

**18 U.S.C. §2422**

(a) Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

**18 U.S.C. §2423**

(a)Transportation With Intent To Engage in Criminal Sexual Activity.

A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

(b)Travel With Intent To Engage in Illicit Sexual Conduct.

A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, with a motivating purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

Additionally, there are continuing violations under federal law for any individual who possesses knowledge of a felony but conceals and/or fails to report the felony to the authorities.

Under **18 U.S.C. §4**,

Misprision of felony

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

Furthermore, the above-listed statutes are not subject to any statute of limitations, thereby undermining the Archdiocese's repeated refrain that the abuse should not proceed to prosecution

because some of them may have arisen years ago.  18 U.S.C. § 3299 specifically excludes crimes related to "child abduction and sex offenses" from time limitations:

> Notwithstanding any other law, an indictment may be found or an information instituted <u>at any time without limitation</u> for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A, 110 (except for section [1] 2257 and 2257A), or 117, or section 1591.

18 U.S.C. § 3299 (emphasis supplied).

Plaintiff and undersigned counsel are not prosecutors but are obligated, as a private citizen and as officers of the court, to make referrals to the authorities for evidence of crimes.  Because Magistrate Judge North sealed these documents, no law enforcement authority has seen Fr. Hecker's deposition or the majority of these documents.  In fact, <u>law enforcement has requested access to Hecker's deposition and these documents but Plaintiff's counsel has told them that Magistrate Judge North's Order prevents them from producing the documents to them</u>.

### V.    <u>The Boston Globe and Massachusetts Cases on the Exact Issue.</u>

This exact battle for these exact types of documents was fought over two decades ago when the Boston Globe decided to intervene in cases involving disgraced pedophile priest John Geoghan and now disgraced Cardinal Bernard Law, who once was revered like Hannan, Schulte, Hughes, and Aymond.  Law was revered until it was unequivocally revealed that he and others like his subordinate bishop Alfred Hughes had known for decades of Geoghan's sexual assault of children but failed to act on their knowledge.[5]

In the first ruling relative to the public's interest in the internal Archdiocese documents in *Leary v. Geoghan*, 2001 WL 1902393 (Superior Court of Massachusetts 11-26-01), Judge

---

[5] Given Judge Costa's reference to the Boston scandal set forth above, plaintiff includes this section not because the Massachusetts state law is binding on this Court, but for a historical perspective.  Unfortunately, this same battle over this same class of documents is still being fought nearly a quarter of a century later.  <u>None of these documents are confidential</u>.

Constance Sweeney, who happens to be Catholic, analyzed the issue under the following

procedural circumstances:

> Globe Newspaper Company (hereafter "Globe") moves to intervene in these
> actions for the limited purpose of obtaining a right to access discovery materials,
> and consistent therewith to have the court require that the parties file discovery
> responses in the public court file. The plaintiffs support the Globe's requests while
> the supervisory defendants oppose them.
> (Emphasis added)

Before giving the reasoning for her "MEMORANDUM OF DECISION AND

OMNIBUS DISCOVERY ORDER," Judge Sweeney set forth her succinct ruling as follows:

> For the reasons set forth herein, the Globe's motion to intervene to obtain access
> to discovery materials is allowed. *Id*.

Also, before writing her legal analysis, Judge Sweeney referenced an existing

"Confidentiality Order," much like the Protective Order the Archdiocese of New Orleans has

proposed in this case and many others.

> The Globe has now brought to the court's attention that the Confidentiality Order
> may well have had the unintended effect of impeding the access of the public and
> the press to certain aspects of these cases. The plaintiffs agree with the Globe's
> position. The supervisory defendants claim that the Globe does not have standing
> to intervene in this matter and further assert that the Confidentiality Order does not
> run afoul of constitutional or statutory provisions concerning public access to
> judicial proceedings and files.

As an initial matter, this is the same position The Archdiocese has advocated for in the

cases pending in this Court and while they were pending in state court - - to keep the public and

media from having access to documents that show underlying crimes.

After a thorough analysis of the media's right to intervene, Judge Sweeney then turned to

the issue of confidentiality orders (protective orders), and wrote, "As discussed earlier, the net

effect of the Confidentiality Order is to shift the presumption that discovery documents are public

to a presumption that they are not whenever a party chooses to stamp 'confidential' on a discovery response and the other parties do not challenge that designation." *Id*. at p. 6.

This same unilateral designation process employed by The Archdiocese of New Orleans in this case should be rejected by this Court. The same rings true for the unjustified sealing of documents as is the case here.

And while the Commonwealth of Massachusetts has procedural rules more specifically directed at the issue of the public's right to discovery than do the Federal Rules of Civil Procedure, the outcome should be no different here because the *Leary* court relied on jurisprudence from the Unites States Supreme Court (also discussed above). "The United States Supreme Court has recognized a general, but not necessarily unlimited, right of the public to access pretrial discovery. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 37 (1984). See also, *Cable News Network, Inc. v. United States Dist. Court,* 472 U.S. 1017 (1985) and *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249 (4th Cir.1988)."

Likewise, another Geoghan case, *Demeo v. Geoghan*, 2001 WL 1902397 (Superior Court of Massachusetts 11-26-01) involved an attempt to "impound" or seal the pleadings adding Cardinal Bernard Law to the case.

> Plaintiffs have moved to amend their complaints to add His Eminence Bernard Cardinal Law as an individual defendant in each of the captioned actions. Neither the present defendants nor Cardinal Law oppose that amendment. Both, however, seek to impound the pleadings revealing Cardinal Law's status as a defendant on grounds that Cardinal Law has denied the allegations of the amended complaints, those complaints contain unproven allegations and the likelihood of publicity attendant on revelation of his status as an individual defendant would make a fair trial difficult. Plaintiffs oppose the motion on grounds that defendants have not overcome the general principle of publicity that typically attends matters pending in the courts.

In denying the defendants' (including Cardinal Law) motion, the *Demeo* court concluded, "For fairness and balance, we ultimately depend, and must depend, not on closed doors, but on a collective willingness to hear both sides before reaching firm conclusions." *Id* at p. 2.

Plaintiff asks for nothing more or less than what the plaintiffs received in the Boston cases, transparency of the proceedings, particularly the Fr. Hecker deposition and documents that establish multiple crimes and their cover up.

## CONCLUSION

For all of the foregoing reasons, *Plaintiff's Second Motion to Unseal the Deposition of Lawrence Hecker* should be **GRANTED,** the documents should be unsealed, and the matter should be criminally referred to the appropriate local, state, and federal authorities.

Respectfully submitted,

/s/ Soren E. Gisleson
SOREN E. GISLESON La Bar No. 26302
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

-AND-

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA  70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
jdenenea@midcitylaw.com

-AND-

RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
Fax: (504) 780-9891
Email: trahant@trahantlawoffice.com
*Attorneys for J.W. Doe*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel of record by operation of the Court's electronic filing system on this 17th day of May 2023.

/s/ Soren E. Gisleson
SOREN E. GISLESON